UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICK ECKER,

        Plaintiff,

  v.                                              Case No. 07-C-371

WISCONSIN CENTRAL LTD,

        Defendant.

## DECISION AND ORDER

      Plaintiff seeks sanctions against the defendant for what he argues was improper coaching of two deposition witnesses. The alleged coaching took place after counsel for plaintiff had completed his examination of the witnesses and just before opposing counsel began his examination. Plaintiff seeks exclusion of each witness's testimony after the break to the extent it added to or differed from his testimony before. Upon review of the transcripts and consideration of the authority cited by the parties, I conclude that although counsel for the defendant discussed with the witnesses what he intended to ask them, there is no hard and fast rule against such conduct the violation of which warrants the sanction plaintiff seeks. Nor is there any evidence that counsel "coached" the witnesses in the sense that he instructed them how to answer his questions. I therefore decline to impose the sanctions requested. Instead, I conclude that the matter is best handled by allowing ultimate fact-finder to consider the circumstances of the break itself and counsel's conversation with the witnesses in assessing the witnesses' credibility. While not a sanction, I conclude that manner of proceeding most directly addresses the concerns plaintiff has raised. Accordingly, the motion for sanctions will

be denied.

**I. Welicky Testimony**

One of the key issues in this case involves how the switch in question was operating at the time plaintiff pulled it and injured his back. Plaintiff reported his injury to an employee named Joseph Whitt. Whitt accompanied plaintiff to the hospital, where plaintiff alleges he told Whitt that the switch had not been operating smoothly, which led to his injury. Whitt denies this. Whitt then had a conversation with another employee named Jeff Welicky. Plaintiff believes Welicky's original testimony supports plaintiff's claim that he (plaintiff) did, in fact, tell Whitt that the switch had not been operating properly.[1]

In the plaintiff's view, Welicky originally testified that nothing about the switch's functionality had come up in his conversation with Whitt.

> Q. What did he tell you?
> A. That Pat was operating the 527 switch out at Fair Park, and that as he was pulling the switch toward him, he felt a pop in his back.
> Q. Okay.
> A. That he was having some pain and attempted to walk it off. He apparently was unable to walk off the pain, got in the company vehicle, and drove to the depot and reported it to Whitt.
> Q. And did Mr. Whitt say anything else to you about how the accident happened or Mr. Ecker's injuries at that time?
> A. I don't think so.

(Weliky Dep. at 22-23.)[2]

Defense counsel then requested a break. Following the break, counsel and Welicky engaged in the following dialogue:

---

[1] The operative facts are set forth in the plaintiff's motion, rather than his brief.

[2] The transcripts are attached to the motion.

2

> Q. And again you had occasion while you were with him [Whitt] at the hospital to talk to him about the incident?
> A. Yes.
> Q. Okay. In either of those two conversations, either the one on the telephone or the one at the hospital, did Mr. Whitt indicate to you what Mr. Ecker had said about the condition of the switch?
> A. Yes. When we were at the hospital, Whitt told me about a conversation that he had with Ecker when Ecker arrived at the depot at approximately 7:45 on the day - - the morning of the incident. And it was that conversation that I had with Whitt that was held at the hospital in the waiting room.
> Q. And what did Mr. Whitt tell you Mr. Ecker said about the switch when he came into the depot?
> A. Whitt had asked Ecker what he was doing when he was hurt, and Ecker told Whitt that he was operating the switch. *And Whitt asked Ecker, Was there anything wrong with the switch? Ecker told Whitt there was nothing wrong with the switch.*

(Weliky Dep. at 59-61.)

Thus, before the break Welicky did not "think" he had any further recollections of any conversations with Whitt about "how the accident happened," yet after the break he was able to recall a specific conversation, including locations and times, in which "Ecker told Whitt there was nothing wrong with the switch." Plaintiff finds this highly suspicious. More than that, plaintiff contends it is improper and deserving of sanctions.

In support of his argument that counsel's conduct was improper, plaintiff notes that Fed. R. Civ. P. 30(c)(1) states that at a deposition the examination and cross-examination of the witness shall "proceed as they would at trial under the Federal Rules of Evidence . . .." Plaintiff claims that counsel for the defendant violated this rule when "improperly conferred with their witnesses on two separate occasions, for the purpose of changing the witnesses' testimony." (Pl.'s Br. Supp. Mot. Sanctions at 3.) In *Hall v. Clifton Precision*, 150 F.R.D. 525, 527 (E.D. Penn. 1993), the court adopted the rule enunciated in several cases that "private conferences between deponents and their

3

attorneys during the taking of a deposition are improper unless the conferences are for the purpose of determining whether a privilege should be asserted." The underlying purpose for the rule, the court explained, was to insure the integrity of the proceeding:

> There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness-not the lawyer-who is the witness. As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable and creative arguments of law. But the lawyer is not entitled to be creative with the facts. Rather, a lawyer must accept the facts as they develop.

*Id.* at 528 (footnote omitted). Likewise, in *Eggleston v. Chicago Journeymen Plumber's Local Union 130*, the Seventh Circuit condemned private off-the-record conferences between plaintiffs and their counsel, noting "[i]t is too late once the ball has been snapped for the coach to send in a different play." 657 F.2d 890, 902 (7th Cir. 1981).

But in both *Hall* and *Eggleston* the private conferences occurred while opposing counsel was questioning the witnesses, and often while a question was pending. *Hall*, 150 F.R.D. at 526; *Eggleston*, 657 F.2d at 901-02 ("There were also an estimated 127 private, off-the-record conferences between plaintiffs and their counsel, many of which occurred between the question and answer or the declination to answer."). Here, by contrast, the conference occurred after plaintiff's attorney had completed his questions and before counsel for the defendant undertook his own examination. Counsel for the defendant did not interrupt the questioning of plaintiff's counsel or try to steer the witness to a different answer, but instead waited until plaintiff's counsel had completed his examination before attempting to clear up what he apparently thought was a misunderstanding on the part of the witness. Other courts have declined to find such conduct deserving of sanctions.

4

*See, e.g., Odone v. Cola Int'l. PLC,* 170 F.R.D. 66, 68 (D. D.C. 1997) ("Certainly, in retrospect, it would have been preferable for the plaintiff's attorney to ascertain on the record whether his client misinterpreted a document. The Court, however, cannot penalize an attorney for utilizing a five-minute recess that he did not request to learn whether his client misunderstood or misinterpreted the questions and then for attempting to rehabilitate his client on the record. An attorney has an ethical duty to prepare a witness."); *In re Stratosphere Corporation Securities Litigation*, 182 F.R.D. 614, 620 (D. Nev. 1998) ("This Court is not aware of any cases, at least in the Ninth Circuit, which precludes counsel from speaking to his or her client/witness during recesses called by the court during trial or during regularly scheduled recesses of depositions. Such breaks in the action are usually not taken when a question is pending and are usually not at the instigation of the deponent or counsel. If they are requested by the deponent or deponent's counsel, and the interrogating attorney is in the middle of a question, or is following a line of questions which should be completed, the break should be delayed until a question is answered or a line of questions has been given a reasonable time to be pursued.").

In light of the foregoing, I conclude that the mere fact that counsel for the defendant privately conferred with the witness during a break after the plaintiff completed his examination does not warrant sanctions. I also find no evidence that there was anything improper about counsel's conversation with the witness. While it may seem strange that a regular employee would later remember plaintiff saying there was nothing wrong with the switch, Welicky was not a regular employee. As the defendant notes, Welicky is a risk management officer for the company and among his jobs, presumably, is to deal with on-the-job accidents. Given his position in risk management, it no longer seems at all unusual that he would receive – and recall – specific information about the

5

cause of the accident, including the fact that the switch was operating properly at the time of the plaintiff's accident. When told that an employee injured himself while pulling a switch, it would be perfectly normal – and even expected – for the risk officer to ask whether anything were wrong with the switch.

Second, the defendant notes that Welicky's testimony on this point was not some sort of surprise mid-deposition concoction. Earlier in the deposition Welicky actually acknowledged the fact that there was a difference of opinion as to how the switch was working. Moreover, Whitt filed a report with Welicky on the *same day* as the accident that indicates that "Pat [Ecker] stated that the switch did not throw hard." (Def. Response, Ex. A at 2.) It is thus clear that the switch's operation was a key point in the minds of both Whitt and Welicky as early as the day of the accident itself, and it therefore appears that Welicky's "new" testimony was merely a recollection as to something he already knew about rather than coached testimony invented solely for purposes of the present lawsuit.

Finally, I note that it is not as though Welicky did an about-face as to a specific question about the operation of the switch. Recall that plaintiff's counsel asked him, "did Mr. Whitt say anything else to you about how the accident happened," to which Welicky responded "I don't think so." The parties spend a great deal of effort explaining the nuances of "how" an accident can happen, with the defendant believing Welicky could have interpreted the "how" question narrowly and without reference to the switch's condition. This is eminently plausible, in fact, when one considers that Welicky testified that the switch *was* operating properly. Because the switch was operating normally (in his mind), that did not factor into his response as to the question counsel posed to him: "how the accident happened." For example, if one is asked to explain "how" a car

6

accident happened, a witness might say "the car ran a red light and hit the other car" – he would not say "the car, whose brakes were operating properly, ran a red light and hit the other car." The omission in response to the original question is thus understandable.

For all these reasons, I conclude that no misconduct occurred. To the extent plaintiff believes the witness changed his testimony after the break because of instructions from counsel for the defendant, he can so argue to the jury.

**II. Waldburger Testimony**

The second instance of alleged coaching involved the testimony of Peter Waldburger. One of the defendant's defense theories is that it lacked any notice that the switch in question was difficult to throw. Plaintiff asserts that he and another employee had made repeated complaints about it.

Waldburger was asked at his deposition about his interpretation of what an "FRA defect" was. (FRA is short for the Federal Railroad Administration.) At one point Waldburger nodded in response to plaintiff's counsel's question: "So any condition of the switch that prevents smooth operation of the switch would be an FRA defect?" (Waldburger Dep. at 21-22.) After nodding, Waldburger then protested that the question was broad, but he ultimately answered "yes" when the question was repeated. Following a break requested by defendant's counsel, Waldburger "clarified" his response by stating that an FRA defect did *not* arise merely from a less-than-smooth operation of the switch. Instead, in his view, it was only an FRA defect if the switch wouldn't throw at all.

Although ostensibly Waldburger's "clarification" resulted in a narrowing of his original answer, neither the motion or the briefs explain why Waldburger's interpretation of what constitutes an "FRA defect" has anything to do with the company's notice of a problem with the switch. In other words, the plaintiff has not explained why one employee's interpretation of "FRA defect" is

7

material to this litigation, and the point is not clear from review of the deposition itself. Moreover, it appears that the definition of an "FRA defect" is either a legal conclusion or a matter of expert testimony, and it is not clear why this witness's testimony on that point would be admissible in any event.

More importantly, I note that much of the witness's "clarification" involved a matter of semantics and the defining of terms rather than an explicit change in testimony. Immediately prior to the question addressed above, counsel asked the witness about what happens when a rod rubs against a railroad tie, and the witness stated that the rubbing could "restrict the rod from moving." "Obviously, if it's tight against there, it just makes it throw harder." (Waldburger Dep. at 21.) Counsel asked whether that was an FRA defect, and the witness said "I don't believe so." At this point in the deposition it was clear that the witness did *not* believe "any condition" making the switch operate less smoothly, or throw harder, would constitute an FRA defect.

The discussion between counsel and the witness involved what is undoubtedly a continuum of sorts: at what point does a switch become so difficult to move that it does not work at all? Or, to use the witness's parlance, at what point does a switch become an "improper-throwing switch," which *could* constitute an FRA defect? The witness was clear in testifying that he believed a switch was not defective merely because it was not operating smoothly – yet counsel then immediately asked "so any condition of the switch that prevents the smooth operation of the switch would be an FRA defect?" From the transcript, this appears to be the opposite of what the witness was saying. These are gray areas, to be sure, but it was only when plaintiff's counsel seized on the witness's nonverbal nod – which arguably contradicted his earlier testimony – that counsel believed the witness had definitively testified that "any" condition that "prevents smooth operation" of the switch would

8

constitute an FRA defect. He cannot later seize on the confusion that resulted from an unusual question and a nod and seek sanctions claiming that the defendant's counsel improperly coached the witness.

In any event, for the same reasons explained above, I find no conduct warranting sanctions on the part of counsel for the defendant. As with the testimony discussed above, however, to the extent the witness's testimony at trial presents a different story, plaintiff may present to the jury the full context of what occurred during the deposition, and it will be for the jury to discern any discrepancies or improper coaching.

For the reasons given above, the motion for sanction is **DENIED**.

**SO ORDERED** this 16th day of April, 2008.

      s/ William C. Griesbach
William C. Griesbach
United States District Judge